UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Carlous Horton, | ) | |
|     Petitioner, | ) | |
| | ) | No. 19 CV 50150 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Chris Rivers, Warden, | ) | |
|     Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Carlous Horton seeks habeas relief under 28 U.S.C. § 2241, including resentencing. For the reasons that follow, his motions to consider additional caselaw [55] and [56] are granted, but his petition [1] and motion for resentencing [57] are denied.

**Background**

After a jury trial in the Western District of Missouri in 2012, petitioner Carlous Horton was convicted of numerous offenses including, as pertinent to his petition, a count of conspiracy to distribute 5 kilograms or more of cocaine, to manufacture 280 grams or more of cocaine base, and to distribute 280 grams or more of cocaine base, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 (Count 1), possession with intent to manufacture 280 grams or more of cocaine base, *see* 21 U.S.C. 841(a)(1), 841(b)(1)(A) (Count 48), and a count of possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g) (Count 61). Before trial, the government filed notice under 21 U.S.C. § 851 that it was seeking a sentencing enhancement on Counts 1 and 48 based on the following four prior state court convictions:

(1)      a 1995 conviction for possession of a controlled substance with intent to deliver in violation of Illinois law, *see* Ill. Rev. Stat. ch. 56.5 ¶ 1401(d) (1989);

(2)      a 1995 conviction for possession of a controlled substance with intent to deliver in violation of Illinois law, *see* 720 ILCS 570/401(c)(2) (1992);

(3)      a 1999 conviction for possession of a controlled substance with intent to deliver in violation of Illinois law, *see* 570 ILCS 570/401(d) (1992); and

(4)      a 2010 conviction for trafficking in illegal drugs in violation of Oklahoma law, *see* 63 O.S. 2-415 (2007).

The district judge calculated Mr. Horton's sentencing range under the U.S. Sentencing Guidelines to be 360 months to life before application of the sentencing enhancement under § 851. Applying the § 851 sentencing enhancement based of the prior state court convictions, the then-current version of 21 U.S.C. § 841(b)(1)(A)(ii) subjected Mr. Horton to a mandatory

minimum sentence of life imprisonment on Counts 1 and 48. The district judge ultimately sentenced Mr. Horton to life on Counts 1, 48 and 61, and lesser amounts of imprisonment on the other counts, all to be served concurrently.

Mr. Horton appealed, arguing that (1) evidence obtained in violation of the Fourth Amendment should have been suppressed, (2) the government failed to produce exculpatory materials in violation of *Brady*, (3) the government engaged in outrageous conduct throughout the investigation and prosecution; and (4) the district court erred during jury selection and failed to investigate a potential problem with a juror that arose during trial. The Eighth Circuit affirmed his conviction and sentence. *See United States v. Horton*, 756 F.3d 569 (8th Cir. 2014).

Mr. Horton then filed a motion under 28 U.S.C. § 2255 in the Western District of Missouri seeking vacate, set aside, or correct his sentence based on ineffective assistance of counsel, alleging that counsel was ineffective for failing to (1) seek to suppress evidence obtained in violation of the Fourth Amendment, (2) obtain potentially exculpatory evidence from the government, (3) challenge Mr. Horton's removal from the courtroom during jury selection, and (4) be accessible as standby counsel. The district court denied the motion. *See Horton v. United States*, No. 15 CV 3019, 2015 U.S. Dist. LEXIS 100915 (W.D. Mo. Aug. 3, 2015) and 2015 U.S. Dist. 135321 (W.D. Mo. Oct. 5, 2015).

Mr. Horton has now filed a petition under 28 U.S.C. § 2241 seeking to be resentenced based on two Supreme Court decisions that post-date both his direct appeal and the resolution of his § 2255 motion. First, Mr. Horton contends that under *Mathis v. United States*, 136 S. Ct. 2243 (2016), the four prior convictions upon which the sentencing court determined he was subject to a minimum sentence of life imprisonment are no longer usable for a sentencing enhancement under 21 U.S.C. § 851. Second, he contends that under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his conviction as a felon in possession of a firearm must be vacated because the government failed to prove a required element of the offense. The Court considers each argument in turn.

**Analysis**

**I.**     ***Mathis***

Mr. Horton argues that under the Supreme Court's 2016 decision in *Mathis v. United States*, his four prior state court drug offenses are no longer available to be used for sentencing enhancements under 21 U.S.C. § 841(b)(1)(A)(ii) and § 851, and he is therefore not subject to a minimum sentence of life. But before the Court can address the merits of his argument, it must first determine whether Mr. Horton's argument can be brought in a petition under 28 U.S.C. § 2241.

The normal avenue available to a federal prisoner to collaterally attack his sentence is 28 U.S.C. § 2255. But the ability to obtain relief under § 2255 is limited: for instance, a motion must be brought within one year of the conclusion of the direct appeal, *see* 28 U.S.C. § 2255(f); a prisoner may bring only one motion under § 2255 as of right, *see* § 2255(h); and a second or successive motion must be based on either newly discovered evidence or a Supreme Court case

involving a new interpretation of the U.S. Constitution, *see* § 2255(h)(1), (2). However, if a federal prisoner can show that § 2255 is "inadequate or ineffective to test the legality of his detention," then the prisoner may be able to obtain relief under the "savings clause" of 28 U.S.C. § 2255(e). *Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020). If a prisoner can satisfy the "inadequate or ineffective" provision of § 2255(e), then he can attempt to obtain relief under the general federal habeas statute, 28 U.S.C. § 2241. Unlike a motion under § 2255 which is filed in the district where the prisoner was sentenced, a petition under § 2241 is filed in the district where the prisoner is in custody. *See Webster v. Daniels*, 784 F.3d 1123, 1144 (7th Cir. 2015).

Mr. Horton was convicted and sentenced in the Eighth Circuit, but at the time[1] he filed this § 2241 petition was housed within the Seventh Circuit and so correctly filed his petition here. The question though becomes which jurisdiction's law governs the scope of the savings clause, *i.e.*, whether § 2255 is "inadequate or ineffective?" The Seventh Circuit has not determined that choice-of-law issue. *Chazen v. Marske*, 938 F.3d 851, 865 (7th Cir. 2019) ("Today's opinion avoids resolving the choice-of-law problem . . .") (J. Barrett, concurring). Mr. Horton has cited primarily to Seventh Circuit law when discussing the scope of the savings clause. The government argues that the law of the jurisdiction of conviction should apply. Dkt. 33 at 7. But in a different recent case, it acknowledged that "no court has applied the law of the court of conviction in determining the scope of the savings clause." *Haynes v. Rivers*, No. 20 CV 50024, 2020 U.S. Dist. LEXIS 159688, at *4-5 (N.D. Ill. Sept. 2, 2020). Ultimately in this case, the Court need not resolve the choice-of-law issue because, as will be seen below, Mr. Horton's arguments are not really ones under *Mathis*, could have been brought in his original § 2255 motion, and therefore do not fall under the "inadequate or ineffective" savings clause of § 2255(e) under either circuit's analysis. The Court will follow Mr. Horton's lead and begin with the Seventh Circuit's analysis and will begin with his prior Illinois conviction.

In *In re Davenport*, the Seventh Circuit held that whether § 2255 was "inadequate or ineffective" turns on whether it provided the "prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998). The Seventh Circuit later established a three part test to determine whether a prisoner has satisfied the savings clause of § 2255(e): "(1) the claim relies on a statutory interpretation case, not a constitutional case and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019).

---

[1] Mr. Horton filed this action while incarcerated at USP Thomson, a prison located in this Court's Judicial District. (Dkt. 1.) He was relocated to USP Florence in Colorado during the pendency of this litigation. (Dkt. 43.) The proper forum for a 28 U.S.C. § 2241 habeas corpus petition is the judicial district where the prisoner is incarcerated. *See Webster*, 784 F.3d at 1144 (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004)). This case was properly filed in the Northern District of Illinois as Mr. Horton was located here at that time. This raises the potential question of whether the Court should proceed with this action or transfer it to Colorado. This issue, however, does not go to the Court's subject matter jurisdiction, but instead is better understood as an issue of venue or personal jurisdiction allowing the Court to forgo the issue and resolve Mr. Horton's petition. *Rumsfeld*, 542 U.S. at 451-52 (Kennedy, J., concurring); *Moore v. Olson*, 368 F.3d 757, 759-60 (7th Cir. 2004). As the Court has subject matter jurisdiction to resolve this case, the Court sees no reason to transfer it to Colorado as that would only delay the inevitable rejection of the habeas corpus petition.

The government concedes the first element of the test, that *Mathis* is a case of statutory, not constitutional, interpretation. As a result, a claim under *Mathis* could not be brought in a successive motion under § 2255, which is limited to cases involving constitutional interpretation. The third element of the test is also satisfied because the Seventh Circuit has held that the wrongful application of a statutory minimum sentence is a miscarriage of justice. *See Chazen*, 938 F.3d at 856 (involving an enhancement under the Armed Career Criminal Act); *see also Horton v. Hudson*, No. 19 CV 50154, 2020 U.S. Dist. LEXIS 168267, at *5 (N.D. Ill. Sept. 15, 2020) (applying the holding in *Chazen* to enhancements under 21 U.S.C. §§ 841(b)(1)(A) and 846). But Mr. Horton's attempt to avail himself of the savings clause falters on the second element because even if *Mathis* is retroactive, his arguments are not really ones that fall under *Mathis*, and so he could have brought them earlier This is the point at which the Court must touch upon the substance of Mr. Horton's arguments, even though it is still addressing the procedural issue of whether the claim falls within the scope of § 2241 via the savings clause.

To address why Mr. Horton's arguments are not really ones under *Mathis*, the Court must first review in greater detail the penalties for his counts of convictions, as well as the prior state convictions the sentencing court used as predicates to enhance his sentence. The penalties for his drug offenses under Counts 1 and 48 are set out in the version 21 U.S.C. § 841(b)(1)(A) that was in effect both in 2011 at the time of his offenses and 2012 at the time of his sentencing: "not less than 10 years or more than life," except for various enhancements including that if "a person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment."[2] The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." 21 U.S.C. § 802(44).

The language of § 802(44) suggests that *any* state drug offense may serve as a predicate offense. But to avoid the problem of conduct qualifying as a predicate offense in some states but not in others, the Supreme Court has limited when a state offense may serve as a predicate for a federal sentencing enhancement. In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court applied a categorial approach to determine when a state offense may serve as a predicate offense. Under the categorial approach, a court compares the text of the federal statute that provides for the sentencing enhancement with the text of the state statute of conviction to ensure that the state statute does not cover conduct broader than the federal statute. *Id.* at 602. *Taylor* involved a federal statute under which a defendant's sentence could be enhanced if he had been previously convicted of a violent felony including burglary. *Id.* at 578. Because burglary is not defined by federal law, the Supreme Court held that determining whether a state conviction for burglary could serve as a predicate offense required comparing the elements of burglary set out in the text of the state statute to the "generic sense in which the term is now used." *Id.* at 598.

For example, in *Van Cannon v. United States*, 890 F.3d 656 (7th Cir. 2018), the Seventh Circuit applied the categorical approach to conclude that Minnesota's offense of second-degree

---

[2] In 2018 the First Step Act amended 21 U.S.C. 841(b)(1)(A), changing "felony drug offense" to "serious drug felony."

burglary cannot serve as a predicate offense for a sentencing enhancement under the Armed Career Criminal Act. The court compared the generic crime of burglary, which includes as an element that a person entered a building without consent and with the *intent* to commit a crime, to the Minnesota offense, the elements of which require only that a person entered a building without consent and committed a crime. *Id.* at 663-64. The text of the Minnesota statute does not include as a required element that the person entered *with the intent* to commit the crime, and so under the categorical approach the Minnesota statute criminalizes conduct that is broader than the generic offense, and therefore cannot serve as a predicate offense. *Id.* at 664-65.

After *Taylor*, the Supreme Court recognized limited circumstances under which a court can look beyond the text of a state statute to determine if a defendant's prior offense can serve as a predicate offense for a sentencing enhancement. In *Descamps v. United States*, 570 U.S. 254 (2013), the Supreme Court applied a modified categorical approach, under which the court can also "consult a limited class of documents, such as indictments or jury instructions, to determine exactly what conduct the defendant engaged in." *Id.* 257. But the modified categorical approach is available only if the state criminal statute is divisible. *Id.* A state statute is divisible if it "sets out one or more elements of the offense in the alternative." *Id.* Phrased differently, statutes are divisible if they "list elements in the alternative, and thereby define multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). As an example, the Supreme Court hypothesized a state law that prohibited "'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to create two different offenses, one more serious than the other." *Id.*

Following *Descamps*, some courts applied the modified categorical approach not only where a state statute set out alternative elements, but also alternative means of committing one of those elements, including the Eighth Circuit in *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015). *Mathis* involved Iowa's burglary statute, which covered not only the unlawful entry into a building or structure same as the generic offense, but also reached a broader range of places including any "land, water or air vehicle." *Id.* at 1074. The Eighth Circuit held that in *Descamps* the Supreme Court had rejected any distinction between alternative elements and alternative means, and so upheld use of the modified categorical approach to determine from charging documents that the defendant had entered a building, and so his conduct fell within the scope of the generic offense. *Id.* at 1074-75.

But the Supreme Court reversed, clarifying that the locations listed in the Iowa statute "are not alternative elements, going toward the creation of separate crimes. To the contrary, they lay out alternative ways of satisfying a single locational element . . . so that a jury need not agree on which of the locations was actually involved." *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016). As a result, the statute was indivisible, the modified categorical approach did not apply, and the sentencing court should have looked only to the text of the statute to conclude that it criminalizes conduct broader than the generic offense, and therefore conviction under Iowa's burglary statute could not serve as a predicate offense. *Id.* at 2257.

More recently, in *Shular v. United States*, 140 S. Ct. 779 (2020), the Supreme Court addressed sentencing enhancements based on prior conduct, such as enhancements for "serious drug offenses" under the Armed Career Criminal Act, as opposed to specific prior crimes, like burglary. The Supreme Court held that the categorical approach still applies to enhancements

based on conduct, but that a sentencing court need not come up with a generic offense for comparison, and instead ask only whether the "state offense involved the conduct specified in the federal statute." *Id.* at 782. Consistent with *Shular*, in *United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020), the Seventh Circuit applied the conduct-based categorical approach to sentencing enhancements for prior "felony drug offenses" under § 841(b)(1)(C), the same defined term that was the basis of Mr. Horton's sentencing enhancement under § 841(b)(1)(B).

Which brings us to Mr. Horton's contention that under *Mathis*, the sentencing court erred by relying on his four prior state drug offenses to enhance his sentence under 21 U.S.C. § 841(b)(1)(A). To begin, the government concedes that two of his Illinois convictions—his 1995 conviction under Ill. Rev. Stat. ch. 56.5 ¶ 1401(d) (1989) and his 1999 conviction under its successor, 570 ILCS 570/401(d) (1992)—may not survive *Mathis* because those are catchall statutes that are indivisible. *See Najera-Rodriguez v. Barr*, 926 F.3d 343, 348 (7th Cir. 2019) (finding that a catchall provision in Illinois' controlled substances statutes, similar to Ill. Rev. Stat. ch. 56.5 ¶ 1401(d) and its successor, 570 ILCS 570/401(d), was overbroad when compared to federal controlled substances statutes). But that still leaves two prior state law drug offenses, all that § 841(b)(1)(A) required at the time to mandate a life sentence.

Mr. Horton argues that those remaining two prior convictions—his 1995 conviction for possession of a controlled substance with intent to deliver in violation of Illinois' 720 ILCS 570/401(c)(2) pertaining only to cocaine and its analogs, and his 2010 conviction for trafficking in illegal drugs in violation of Oklahoma's 63 O.S. 2-415—cannot serve as predicate offenses because they cover conduct broader than federal drug laws. Specifically, he first argues that the Illinois statute defines "cocaine" to include "positional isomers," while the federal definition of cocaine does not. In *United States v. Ruth*, the Seventh Circuit agreed that because the Illinois definition of cocaine includes positional isomers, the Illinois definition covers more conduct than the federal law, and therefore the defendant in that case could not be subjected to a sentencing enhancement based on his conviction under 720 ILCS 570/401(c)(2). *Ruth*, 966 F.3d at 650. However, *Ruth* was decided on direct appeal. The threshold question before this court is not whether Mr. Horton has a meritorious overbreadth argument about the mismatched definitions of cocaine, but whether Mr. Horton was precluded from making that argument earlier, including in his original § 2255 motion, so that it now falls within the savings clause of § 2255(e).

Mr. Horton's argument about the overbreadth of the Illinois statute is not an issue newly-addressed by *Mathis*. As discussed above, *Mathis* clarified the limits on using the modified categorial approach, under which courts can look to certain other documents, such as indictments or jury instructions, to determine under which part of a divisible statute a defendant's conduct fell. The issue Mr. Horton raises in his § 2241 petition is based solely on comparing the texts of the statutes, specifically the definitions of cocaine under Illinois law with the federal definition, and has nothing to do with the use of other documents to determine the true nature of his conduct. His assertion that the definition of cocaine is broader under Illinois law than federal law is merely an argument for application of the categorical approach long ago adopted by the Supreme Court in *Taylor*, a 1990 decision that predates his original § 2255 motion filed in 2015, and even his offenses of conviction in 2011. Mr. Horton could have raised his arguments that the Illinois statute is overbroad in his original § 2255 motion. Therefore, he cannot now avail

- 6 -

himself of the savings clause because in his case, § 2255 was not "inadequate or ineffective" to make that argument.

The Court acknowledges the cases Mr. Horton has cited supporting in general that *Mathis* is a case of statutory interpretation, that courts have found it to be retroactive, and that before *Mathis*, a *Mathis*-type argument in the Eighth Circuit would have been futile, all of which are relevant considerations when looking to the scope of the savings clause. But the reason Mr. Horton cannot proceed under the savings clause is because his argument about the mismatch between the Illinois and federal statutes is not a *Mathis*-type argument, and could have been raised in his original § 2255 motion. *See Alexander v. Entzel*, No. 19 CV 1301, 2020 U.S. Dist. LEXIS 38094, at *9 (C.D. Ill. Mar. 5, 2020) (argument that the definition of cocaine under Illinois law was overbroad was unaffected by *Mathis* and could have been brought in a motion under § 2255).

The Court now turns to Mr. Horton's argument about use of his Oklahoma conviction as a predicate offense. Mr. Horton contends that the Oklahoma statute under which he was convicted covers controlled substances not included in the federal schedule of controlled substances, and so under the categorical approach is overbroad and his conviction cannot serve as a predicate offense. Specifically, he argues that the Oklahoma statute includes among its list of controlled substances "salvinorina" and "salvia divnurum," while the list of controlled substances covered by federal law do not. However, it is undisputed that Mr. Horton pleaded guilty to violating 63 O.S. 2-415, which criminalizes trafficking in any of 13 different controlled substances listed in subsection A of that statute. Neither salvinorina nor salvia divnurum is included among those 13 substances. Salvinorin A and Salvia Divinorum are included in a different Oklahoma statute, 63 O.S. 2-204 which lists the controlled substances that are included in Schedule I. But Mr. Horton's statute of conviction, 63 O.S. 2-415, governs trafficking only as to the 13 substances listed in its own subsection A. Therefore, Mr. Horton's contention that 63 O.S. 2-415 is overbroad because it includes Salvinorin A and Salvia Divnorum is incorrect. In any event, like his argument about Illinois' overbroad definition of cocaine, this argument is not really one under *Mathis* and could have been raised in his original § 2255 motion.

Finally, Mr. Horton contends that 63 O.S. 2-415, is overly broad for the additional reason that it allows conviction for "endeavoring to manufacture," and therefore sweeps more broadly than federal law, which he contends refers only to "manufacture," without reference to endeavoring. In support, he cites to *United States v. Faulkner*, 950 F.3d 670 (10th Cir. 2019). But *Faulkner* addresses a conviction under 63 O.S. 2-408, a different statute than the one under which Mr. Horton was convicted. *Id.* at 673. 63 O.S. 2-408 criminalizes the conduct of a person who "offers, solicits, attempts, endeavors, or conspires to commit any offense defined in the Uniform Controlled Dangerous Substances Act." It does not define "manufacture" as used in 63 O.S. 2-415, and instead creates an entirely separate offense.

The Court notes that Mr. Horton's arguments fare no better under the Eighth Circuit's analysis of the scope of § 2255(e)'s savings clause. As in the Seventh Circuit, a petitioner may not avail himself of the savings clause if his argument could have been raised earlier, such as in his original § 2255. *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000). Although

*Mathis*-like arguments were futile in the Eighth Circuit at the time of Mr. Horton's original § 2255, as explained earlier his arguments are not really ones brought under *Mathis*.

## II.   *Rehaif*

Next, Mr. Horton argues that under the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his conviction as being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) is invalid. In *Rehaif*, the Supreme Court held that § 922(g) requires the government to prove not only that a defendant possessed a firearm and that he belonged to a class of persons prohibited from possessing a firearm, but also that he knew that at the time he possessed the firearm he was a member of that class of persons. In Mr. Horton's case, that would require the government to prove that Mr. Horton knowingly possessed a firearm, was a felon, and knew at the time he possessed the firearm that he was a felon. Mr. Horton contends that the government failed to prove that he knew he was a felon. Dkt. 6 at 1.

As with his argument purportedly under *Mathis*, the Court begins by looking to whether Mr. Horton's argument under *Rehaif* falls under the savings clause of § 2255(e). *Rehaif* is a case of statutory construction, decided after his original § 2255 motion so that he could not have raised it earlier. Nevertheless, Mr. Horton's argument falters on the third prong because Mr. Horton has not established that the government's failure to prove he knew he was a felon is grave enough to be deemed a miscarriage of justice.

In *United States v. Maez*, the Seventh Circuit reviewed the convictions of three defendants, each of whom argued that their convictions should be set aside because jurors were not instructed to determine whether or not the defendants knew they were felons, a required element of their offense as articulated in *Rehaif*. *United States v. Maez* 960 F.3d 949 (7th Cir. 2020). Although the issue arose on plain error review rather than in the context of a petitioner under § 2241, the Seventh Circuit found that failure to include the element in jury instructions did not amount to a miscarriage of justice because of overwhelming evidence that the defendants knew they were felons. *Id.* at 964. In concluding that the evidence was overwhelming, the Seventh Circuit relied on evidence supporting an inference that the defendants knew they were felons, including stipulations to jurors that the defendants were felons, as well as the defendants' criminal histories detailed in their Presentence Investigation Reports prepared for sentencing. *Id.* at 964-65. *See also United States v. Hollingshead*, 940 F.3d 410, 415 (8th Cir. 2019) (failure to instruct jurors to determine whether the defendant knew he was a felon at time of firearm possession did not affect defendant's substantial rights where he previously served a 48-month sentence and a 15-month sentence and so knew he was a felon). Similarly in *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020), on a plain error review of a defendant's assertion that his guilty plea was not knowing and voluntary in light of *Rehaif*, the Seventh Circuit concluded that the defendant "cannot plausibly argue that he did not know his [prior] conviction had a maximum punishment exceeding a year. . . . [He] would have to convince a jury that he either had no knowledge of where he spent twelve years of his life, or that he honestly believed Illinois had imprisoned him eleven years more than the maximum punishment for first-degree murder." *See also United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020) (rejecting defendant's argument that his guilty plea was invalid under *Rehaif* because his "time in prison

would severely hamper an assertion that he was ignorant of the fact that this crime was punishable by more than a year of imprisonment.").

As in the cases cited, during Mr. Horton's criminal proceedings, evidence was presented supporting an inference that Mr. Horton knew he was a felon. To begin, jurors at his criminal trial were instructed that Mr. Horton had stipulated to being convicted of a crime punishable by imprisonment for more than one year. *See United States v. Horton*, No. 11 CR 3021 (W.D. Mo.) Dkt. 368, Instruction 57. In addition, his Presentence Investigation Report prepared for his sentencing in that case recounts five prior felony convictions: (1) a 1992 conviction for which he was originally sentenced to probation, but upon revocation was sentenced to six years in custody, PSR at 21; (2) two 1995 convictions in separate cases for which he received six year sentences, concurrent to the six year sentence for his probation revocation, PSR at 22; (3) a 1999 conviction for which he received a six year sentence, *id.*; and (4) a 2009 conviction for which he received a five year sentence, although the sentence was suspended and he received one year probation, PSR at 24. Neither Mr. Horton, who represented himself at his sentencing, nor his stand-by counsel objected to the PSR. *See United States v. Horton*, No. 11 CR 3021 (W.D. Mo.) Dkt. 552 at 3.

His original sentence of probation in 1992, and his suspended sentence in 2009, could conceivably support an argument that Mr. Horton did not know could have been sentenced to a year or more of incarceration for those offenses, an argument similar to one hypothesized in *Rehaif*. *See Rehaif*, 139 S. Ct. at 2198. But such an argument would be unavailing here because Mr. Horton's probation was revoked and he six years' incarceration for the revocation, imposed concurrent to the six year sentences he received for his two 1995 convictions. On those concurrent six year sentences, Mr. Horton actually served more than two years in boot camp and was then paroled. PSR at 22-23. On his 1999 conviction, he served more than two years and was then paroled. *Id.* at 23. As a result of his prior convictions and years spent in incarceration on multiple offenses, Mr. Horton could not plausibly contend that he did not know he had been convicted of offenses punishable by a year or more of incarceration, or that he was a felon at the time he possessed a firearm.

Because Mr. Horton's criminal history and time in incarceration supports the inference that he knew he was a felon at the time he possessed the weapon for which he was convicted, he cannot establish the miscarriage of justice prong of the savings clause analysis. *See Hellems v. Werlich*, No. 19 CV 1013, 2020 U.S. Dist. LEXIS 180238, at \*\*11-12 (S.D. Ill. Sept. 30, 2020) (petitioner raising a *Rehaif* argument cannot establish miscarriage of justice prong of savings clause analysis where evidence supports an inference that the petitioner knew he was a felon when he possessed a firearm).

## CONCLUSION

For the reasons given, Mr. Horton's motions to consider additional caselaw [55] and [56] are granted, but his petition [1] and motion for resentencing [57] are denied and his petition is dismissed with prejudice. Civil case terminated. The clerk is directed to enter judgment.

Mr. Horton is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Horton need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Petitioner cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his § 2241 petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2), and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Date: December 7, 2020    By: _____
                             Iain D. Johnston
                             United States District Judge